IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                                )
JAMES L. JOHNSON, JR.,          )
                                )
                Plaintiff,      )
                                )
        vs.                     )   Civil No. 11-00704 ACK-RLP
                                )
STATE OF HAWAIʻI DEPARTMENT OF  )
EDUCATION,                      )
                                )
                Defendant.      )
_____ )
```

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On November 17, 2011, Plaintiff James L. Johnson, Jr.
("Plaintiff") filed a complaint against Defendant State of
Hawaiʻi Department of Education ("Defendant" or "DOE").[1/]  ECF No.
1.  The Complaint contained allegations of employment
discrimination on the basis of race, sex, and age in violation of
Title VII of the Civil Rights Act of 1964 and the Age
Discrimination in Employment Act ("ADEA").  Compl. at 2-4, ECF
No. 1.  On December 14, 2011, this Court adopted the magistrate
judge's Findings and Recommendation that Plaintiff's ADEA claim

_____

[1/]   Plaintiff had filed a charge of discrimination with the
Equal Employment Opportunity Commission ("EEOC") in February
2009, and Plaintiff received a right to sue letter from the EEOC
in August 2011.  ECF No. 1.

be dismissed with prejudice because the Eleventh Amendment barred ADEA claims against the State of Hawaiʻi.  ECF Nos. 8, 11.  As a result, only Plaintiff's claims for race and sex discrimination under Title VII remain at issue in this lawsuit.

On January 15, 2013, Defendant filed a Motion for Summary Judgment ("MSJ") as to all of Plaintiff's remaining claims in the Complaint; the Motion was accompanied by a Concise Statement of Facts.  ECF Nos. 35 & 36.  Plaintiff filed his Opposition to the MSJ and his Concise Statement of Facts on May 24, 2013.  ECF Nos. 42 & 43.  Defendant subsequently filed its Reply on May 31, 2013.  ECF No. 44.  The Court held a hearing regarding this matter on June 17, 2013.  ECF No. 45.

After reviewing the memorandums and evidence submitted by both parties, the Court issued a minute order on June 18, 2013 requiring supplemental briefing from the parties under Fed. Rule Civ. Proc. ("Rule") 56(e).  ECF No. 46.  Both Defendant and Plaintiff submitted their supplemental briefs on June 28, 2013. ECF Nos. 47 & 48.

**FACTUAL BACKGROUND**

## I. DOE Teacher Hiring Process

The Court begins with a brief background of the DOE teacher hiring process.  When a DOE school has a vacant teaching position, the school principal or a designated representative chooses applicants from a list of eligible teacher applicants to

conduct interviews and hire a teacher to fill the vacant position.  Decl. of Saiki at 2, ¶ 5, ECF No. 35.  The DOE Personnel Regional Officer ("PRO") generates the lists of eligible applicants.  Id. at ¶ 4.  In order to be considered as an eligible applicant, an individual must first complete the DOE teacher application process, which includes passing the Ventures interview and the PRAXIS exam.  Id. at ¶ 5.  The Ventures interview consists of an interview with a principal or specially trained DOE education officer; during the interview, the individual must answer a set number of standardized questions. Id. at 2 ¶ 6.  The purpose of the Ventures interview is to determine the individual's attitude, behavior, and thinking towards teaching.  Id.

The PRAXIS exam is a set of tests, and teachers are required to pass the exam in order to obtain their license. Plntf.'s CSF Ex. 3 at 27-28, ECF No. 43-5.  Although the record is less than clear, it appears that teachers have a certain number of years in order to pass the exam.  Id. at 136-37.

Principals and representatives choose applicants to interview from the eligible applicant list.  During the interview, the applicants are asked questions in the following categories: (1) Instructional Management, (2) Interpersonal Relationships, (3) Commitment, and (4) Training/Certification/

Experience/Special Abilities.  Decl. of Tom at 4, ¶ 13, ECF No. 47-1.

For the category of Instructional Management, the interviewer determines whether the applicant "(a) understands lesson design; (b) is knowledgeable of subject content (depth and range); (c) is able to assess and diagnose student ability; (d) is able to motivate students/maximize learning; and (e) has a repertoire of teaching modes and strategies.  Id. at ¶ 14.

For the category of Interpersonal Relationships, the interviewer considers whether the applicant "(a) has communications skills and expresses ideas well; (b) is able to manage student behavior in a constructive way; (c) is able to develop positive and productive relationships with students, parents, teachers, staff and others; (d) projects feelings of caring, liking, and rapport; and (e) understands students' cultural backgrounds, values, learning styles, and behavior problems."  Id. at ¶ 15.

For the category of Commitment, the interviewer considers whether the applicant "(a) pursues personal/professional learning and growth; (b) is enthusiastic, poised, confident, encouraging; (c) strives to attain student growth and learning; (d) develops positive student self images; and (e) has [a] positive attitude towards children and learning."  Id. at ¶ 16.

-4-

For the category of Training/Certification/Experience/
Special Abilities, the interviewer considers whether the
applicant "(a) possesses job-related knowledge, skills, and
abilities required for the position; (b) is willing and capable
of teaching/serving the students assigned to this position; and
(c) possesses other valuable skills/interests/abilities related
to student activities or other supplementary duties." Id. at ¶
17.

Each applicant is rated on a scale of 1 to 4.  Decl. of
Romero at 2, ¶ 7, ECF No. 35-8; Decl. of McCall at 3, ¶¶ 12-13,
ECF No. 35-9.  The ratings, from highest to lowest, are as
follows:  4 - Excellent, 3 - Good, 2 - Fair, 1 - Poor.  Decl. of
Stewart at 000097 at ¶ 3.a, ECF No. 35-12; Decl. of Tom at 3, ¶
8, ECF No. 47-1.  If the principal or representative does not
make a selection from the list, the list is returned to the PRO
and another list is generated.  Decl. of Saiki at 3, ¶ 8, ECF No.
35-6.

Regarding the interview rating system, the description
of the scale is as follows.  A rating of "4" indicates that the
applicant has the maximum knowledge, skills, and abilities
("KSAs") necessary for immediate application on the job.  Decl.
of Tom at 3, ¶ 12, ECF No. 47-1.  The applicant's KSAs are
"directly related to that required on the job and are of
sufficient scope and depth to be applicable to the full range of

-5-

job requirements, including the most difficult or complex situations." Id.

A rating of "3" indicates that the applicant's KSAs are "closely related to that required on the job." Id. at ¶ 11. The applicant's KSAs are "substantial and applicable in meeting the job requirements, including more difficult expectations." Id.

A rating of "2" indicates that the applicant has a moderate level of KSAs that "are closely related to that required on the job." Id. at ¶ 10. The breadth and depth of the applicant's KSAs "are applicable in meeting most of the job requirements, including some of the more difficult expectations." Id.

A rating of "1" indicates that the applicant has the minimal degree of KSAs in order to adequately perform the job. Id. at ¶ 9. The applicant's KSAs are "remotely related to that required on the job" and are "severely lacking in scope and/or depth." Id.

## II. Substitute Teacher Hiring Process

To qualify as a substitute teacher, a person must apply at a particular DOE school and request that the school sponsor him or her to be a substitute teacher. Decl. of Tom at 8, ¶ 21, ECF No. 47-1. The substitute teacher applicant must either have a teaching certificate or take a Substitute Teaching Course offered by the DOE. Id. After finishing the necessary paperwork

-6-

and passing the required background checks, the applicant's information is placed in the Teacher Substitute Employee Automated System ("TSEAS") and the schools receive the applicant's information.  Id. at 10, ¶ 31.

Teachers or administrators may request a substitute teacher for a particular day or period of days.  Decl. of Johnson at ¶ 12, ECF No. 48.  Teachers may also elect to request a particular substitute teacher by giving the system a substitute teacher's contact number.  Id. at ¶ 13.

## III. Plaintiff's Qualifications and Job Applications

Plaintiff is a 69 year-old Caucasian male.  Def.'s CSF Ex. A at 000003, ECF No. 35.  Prior to obtaining his teaching degree, Plaintiff graduated with a degree in Psychology from Linfield College in Oregon.  Decl. of Johnson at ¶ 2, ECF No. 48-1.  After completing his degree at Linfield, Plaintiff taught celestial navigation classes at the Community College of Micronesia, Portland State, Portland Community College, and Clackamas Community College.[2/]  Id. at ¶¶ 3-4.  From 1982-1986 he served as an elected member of the Clackamas Community College Board of Education; he allegedly advocated for and saved the preschool education program at the community college.  Id. at ¶ 5.  In 2001, Plaintiff moved to Puna, Hawaiʻi and joined the

---

[2/] Plaintiff sailed around the South Pacific for eight years before teaching celestial navigation classes in the United States.  Decl. of Johnson at ¶¶ 3-4, ECF No. 48-1.

policy council of Head Start, serving as a vice chairman and then the chairman for the council.  Id. at ¶ 6.  During this time, he decided to obtain his teaching license in order to teach in the public schools.  Id. at ¶ 7.  At some point in time, Plaintiff authored a textbook for third language English speakers. Plntf.'s CSF Ex. 4 at ¶ 6, ECF No. 43.

In 2006, Plaintiff graduated from the Teacher Education Program at the University of Hawaiʻi-Hilo.  Def.'s CSF Ex. A at 3-7, ECF No. 35.  After completing the teaching program, Plaintiff received his teaching certificate and participated in the Ventures interview.  Id. at 8-9.  Plaintiff failed the Ventures interview on his first attempt, but subsequently passed his second interview.  Id. at 9-11; Decl. of Saiki at 3, ¶ 11, ECF No. 35-6.

Plaintiff's graduating class was composed of twenty-seven students.  Def.'s CSF Ex. A at 7, ECF No. 35; Plntf.'s CSF Ex. 4, ECF No. 43-6.  The class contained two males, including Plaintiff, and the rest of the class was composed of female students.  Def.'s CSF Ex. A at 7, ECF No. 35.  While the ethnic background of the female students is not fully disclosed by the record; it appears that three of Plaintiff's female classmates were Caucasian.  Id. at 9.  The other male in Plaintiff's class did not seek a teaching position in Hawaiʻi because he moved to China.  Plntf.'s CSF Ex. 4 at ¶ 6, ECF No. 43.

In 2006, Plaintiff started to interview for teaching positions at various schools.  Plntf.'s CSF Ex. 2, ECF No. 43. Because Plaintiff failed his first Ventures interview, he did not start to receive interviews for job positions until he passed his second Ventures interview around July 2006.  Plntf.'s CSF Ex. 3 at 28-30, ECF No. 43-5.  By this time, some of the people in Plaintiff's class had obtained jobs with the DOE.  Id. at 29, lines 2-4.

After participating in a telephone interview, Plaintiff was hired on a Limited Term Appointment ("LTA") to teach kindergarten at Hoʻokena Elementary School from October 15, 2007 until June of 2008.  Id.; Def.'s CSF Ex. A at 14-15, ECF No. 35. During his LTA, Plaintiff did not interview for teaching positions because his name was not on the DOE PRO applicant list. Def.'s CSF Ex. A at 16-20, ECF No. 35.  Following the completion of his LTA, he continued to interview at various schools for a full-time teaching position.  Plntf.'s CSF Ex. 2, ECF No. 43; Def.'s CSF Ex. A at 16-20, ECF No. 35.

From 2006 until October 2007, Plaintiff applied for twenty-seven teacher positions with the DOE.  Plntf.'s CSF Ex. 2. Between June - December of 2008, Plaintiff applied for fifteen teacher positions at nine different schools.  Id.  All of Plaintiff's female classmates secured teaching positions with the DOE.  Plntf.'s CSF Ex. 4 at 4, ¶ 10.  For one of the open job

positions, Plaintiff's female classmate who had not passed her PRAXIS exam was hired instead of Plaintiff.  Plntf.'s CSF Ex. 3 at 136-137, 141, ECF No. 43-5.

## A. Plaintiff's Alleged Specific Discrete Acts of Discrimination

While the parties provide some information regarding numerous interviews during these time periods (Def.'s MSJ at 5-16, ECF No. 35-3; Plntf.'s CSF at 2-5, ECF No. 43), the Court observes that Plaintiff only discusses a few of the interviews in his Opposition.  Plntf.'s Opp. at 7-10.  Accordingly, the Court provides in detail the facts for the interviews where Plaintiff specifically discusses his alleged evidence of discrimination.

### 1. Keonepoko Elementary School

Plaintiff discusses several interviews at Keonepoko Elementary School in support of his claims of discrimination. Principal Romero was the principal at Keonepoko Elementary School during the events giving rise to this lawsuit.  Plntf.'s CSF Ex. 6, ECF No. 43.

Plaintiff interviewed for a fifth grade position on August 11, 2006, but he did not receive the position.[3/]  Plntf.'s

_____

[3/]  On August 11, 2006, Plaintiff claims that he was the only applicant on the list for a fifth grade position and he was not selected.  Plntf.'s CSF at 2, ¶ 7, ECF No. 43.  However, while the Court observes that Plaintiff has a notation on Exhibit 2 regarding the position, the Court is not able to find any support in the record for the proposition that he was the only
(continued...)

Opp at 7.  Plaintiff was rated a 2 out of 4 in his interview.
Plntf.'s CSF Ex. 6 at 000155, ECF No. 43.

On September 28, 2006, Plaintiff was the only applicant
for a kindergarten position, but a probationary teacher whose
gender is unknown was placed in the position.  Plntf.'s CSF Ex. 3
at 62.  According to Plaintiff, "the person who got the job had a
DOE status of some sort that required that [Principal Romero]
give it to him rather than me."  Plntf.'s CSF Ex. 3 at 62, lines
5-7, ECF No. 43.  However, Plaintiff also states that Romero told
him that "I would never hire you as a kindergarten teacher anyhow
. . . [b]ecause you don't have the knowledge of the developmental
issues with children that young."  Id. at 62, lines 10-16.

Plaintiff next interviewed for a fourth grade position
on June 26, 2008.  Plntf.'s CSF Ex. 2; Ex. 3 at 79-80; Ex. 6 at
000152.  There were three applicants for the position.  Decl. of
Romero at 2, ¶ 5, ECF No. 35-8.  The interview panel consisted of
Principal Romero, Lorena Soultz, a School Services Coordinator,
and Jon Stevenson, an Administrative School Assistant.  Id. at 2,
¶ 6.

The selectee for the position, a Caucasian woman,
scored an overall rating of 3 out of 4, for a "Good" rating from
the interview panel.  Id. at 2, ¶ 7; Plntf.'s CSF Ex. 3 at 81,

---

[3/] (...continued)
candidate on the list for the fifth grade position.

lines 19-20.  The selectee gave specific responses to questions in the areas of Instructional management, Interpersonal relationships, and Commitment.  Plntf.'s CSF Ex. 6 at 000154. Additionally, the selectee's former principals, Lucia Stewart from Chiefess Kapiolani Elementary School and Paul McCarty from Laupahoehoe Elementary School, "commended her for her effectiveness in the classroom." Id.  Both principals stated that they would rehire her.  Id.  Furthermore, Plaintiff admitted in his deposition that the selectee is "a wonderful teacher, and a hard-working person, and a good choice."  Plntf.'s CSF Ex. 3 at 81, lines 12-13, ECF No. 43.

Plaintiff scored an overall rating of 2 out of 4 from the interview panel.  Decl. of Romero at 3, ¶ 8, ECF No. 35-8; Plntf.'s CSF Ex. 6 at 000153, ECF No. 43.  Principal Romero alleges that Plaintiff provided vague answers to questions or did not address the question concept.  Id.

Plaintiff's next interview at Keonepoko occurred on August 4, 2008, for the position of kindergarten teacher. Plntf.'s CSF Ex. 6 at 000152.  Plaintiff was the only candidate on the initial list for the kindergarten position.  Decl. of Romero at 3, ¶ 12, ECF No. 35-8.  Principal Romero interviewed Plaintiff along with Vice-Principal Michelle Payne-Arakaki and teacher Candice Lim, who was the kindergarten grade level

chairperson.  Id. at 3, ¶ 11.  Plaintiff received an overall
rating of 2 out of 4, for a "Fair" rating.  Id. at 3, ¶ 12.

Romero states that, in both the June 26, 2008 and
August 4, 2008 interviews, Plaintiff's strength area was his
commitment to the students.  Decl. of Romero at 4, ¶ 16, ECF No.
35-8.  However, he did not receive a good rating in the areas of
"instructional management, interpersonal relationships, and
training/certification/experience/special abilities."  Id. at 4,
¶ 16.  Romero also states that Plaintiff "generalized his
responses and did not provide specific strategies for lesson
design and solving non-academic problems."  Id.

Additionally, with regard to the August 4, 2008
interview, Principal Romero contacted Ms. Uchimura, the principal
of Hoʻokena Elementary School where Plaintiff completed his
kindergarten LTA.  Plntf.'s CSF Ex. 6 at 000153, ECF No. 43.
Principal Romero summarized Ms. Uchimura's comments as
communicating that Plaintiff was "nice," "needs to watch what he
says to parents," "might be better if he had more structure," and
"had a lot of help from America's Choice coach."  Id.  Principal
Uchimura also stated that she would rehire Plaintiff only if she
was "desperate."  Id.

Principal Romero did not offer Plaintiff the
kindergarten position.  Decl. of Romero at 3, ¶ 13, ECF No. 35-8.
According to Romero, only teacher applicants with a rating of at

least 3 out of 4 are hired in order to ensure that the school
hires a quality teacher.  Id. at 4, ¶ 15.  A new DOE PRO list was
generated, and a Japanese female was interviewed and hired.  Id.
at 3, ¶ 14.  The selectee received an overall rating of 3 out of
4.  Id. at 3, ¶ 14.  Additionally, the selectee had "specific
knowledge of the school and specific plans for dealing with
parent and student problems, and awareness of assessment data
(formative and summative) used to create lessons."  Id. at 3, ¶
14.

### 2. Waiakea Intermediate School

On November 7, 2008, Plaintiff applied for an English
Language Learner ("ELL") position at Waiakea Intermediate School.
Plntf.'s CSF Ex. 2, Ex. 13, Ex. 14, ECF No. 43.  Only two
candidates were on the list for the position.  Plntf.'s CSF Ex.
13 at 000558.  The interview panel consisted of Vice Principal
Robert Hill, Registrar Randall Kaya, and the previous school
year's ELL teacher, Holly Lee.  Plntf.'s CSF Ex. 13 at 000558.
Both Kaya and Lee rated Plaintiff a 4 out of 4 in the first
interview, but Vice Principal Hill rated Plaintiff a 2 out of 4.
Id. at 000558.  Vice Principal Hill expressed concern to
Principal Matsunami that Kaya and Lee were inexperienced at
interviewing candidates because there was a discrepancy in the
ratings.  Hill also voiced concern about Plaintiff's "lengthy,
rambling responses and lack of specificity," his responses to

-14-

classroom management, his lack of experience in teaching middle school students, and his "limited knowledge of teaching Hawaii Content and Performance Standards."  Decl. of Matsunami at 2, ¶ 7, ECF No. 35-13; Decl. of Hill at 3, ¶ 12, ECF No. 44-1.

Subsequently, a second interview was held on November 21, 2008 with a panel consisting of Principal Matsunami and Vice Principal Hill.  Decl. of Matsunami at 2, ¶¶ 7-8.  For the second interview, there were nine applicants for the position, including Plaintiff, but only three applicants agreed to be interviewed. Id. at 3, ¶ 8.  Principal Matsunami rated Plaintiff a 1 out of 4, and Vice Principal Hill rated Plaintiff a 2 out of 4.  Id. at 3, ¶ 9.  According to Principal Matsunami, (1) Plaintiff is not a certificated ELL teacher, (2) Plaintiff did not have knowledge of the basic categorization of second language learners as illustrated by his statement "I don't know the term N.E.P." (Non-English Proficient), and (3) Plaintiff was unclear regarding his knowledge of how to teach reading to ELL students.  Plntf.'s CSF Ex. 13 at 000559.  Principal Matsunami did not hire any of the three applicants who were interviewed.  Id. at 3, ¶ 11.

A third list was generated with four applicants. Plntf.'s CSF Ex. 14 at 000575, ECF No. 43.  Two of the applicants were interviewed, and a Caucasian female was selected.  Id.  The selectee had an ELL certificate.  Id. at 000576; Plntf.'s CSF Ex. 13 at 000559.

-15-

**B. Plaintiff's Hiring Offer and Substitute Teaching Experiences**

After Plaintiff participated in the Keonepoko and Waiakea interviews, Plaintiff interviewed for a teaching position at Honokaʻa Elementary School on December 8, 2008.  Def.'s CSF at 5, ¶ 13, ECF No. 36; Decl. of Tolentino at 2, ¶ 6, ECF No. 35-14. According to Honokaʻa's principal, Plaintiff would have been hired but for a Hawaiʻi Labor Relations Board order mandating the return of the original fourth grade teacher to the job position. Decl. of Tolentino at 2, ¶¶ 8-9, ECF No. 35-14.

Notwithstanding Plaintiff's numerous rejections for full-time employment, Plaintiff has consistently obtained substitute teaching jobs at over nine schools.  Decl. of Johnson at ¶ 15, ECF No. 48-1.  Over nineteen teachers have specifically requested Plaintiff to be their substitute teacher.  Id. at ¶ 15. Plaintiff has also served as a long-term substitute teacher for the following schools and time periods:  (1) Waters of Life Public Charter School from January - May 2007, (2) Pahoa High School and Intermediate School from August - October 2009, (3) Keonepoko Elementary School from April - May 2010, (4) Laupahoehoe Elementary School from August - October 2010.  Id. at ¶ 17.[4]

_____

[4] Notwithstanding this Court's minute order on June 18, 2013 requesting specific evidence of Plaintiff's substitute

(continued...)

**STANDARD**

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012). "The mere existence of some alleged factual dispute between the parties will not

---

⁴/ (...continued)
teaching experience, the DOE failed to provide evidence as to the duration of Plaintiff's substitute teaching jobs or any reviews of Plaintiff's work performance by principals or teachers. Def.'s Supp., ECF No. 47.

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).[5/] If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th Cir. 2010). The nonmoving party must present evidence of a

---

[5/] When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. Id. (citation omitted).

-18-

"genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable."[6] LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).  Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007).  The court may not, however, weigh conflicting evidence or assess credibility.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).[7]

---

[6] The Ninth Circuit has noted that "Legal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." Flaherty v. Warehousemen, Garage and Service Station Emp. Local Union No. 334, 574 F.2d 484, 486 n.2 (9th Cir. 1978), see also Barcamerica Intern. USA Trust v. Tyfield Importers, 289 F.3d 589, 593 n.4 (9th Cir. 2002).  Additionally, allegations in the plaintiff's complaint "do not create an issue against a motion for summary judgment supported by affidavit." Flaherty, 574 F.2d at 486 n.2.

[7] Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly

(continued...)

Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250-51.

## **DISCUSSION**

### **I. Whether This Court Should Consider Plaintiff's Alleged Discrete Acts of Discrimination That Occurred Before April 10, 2008**

As a preliminary issue, Defendant argues that Plaintiff may not present claims of discrimination for events that occurred prior to April 10, 2008.  Def.'s MSJ at 21, ECF No. 35-3.  In order for a district court to have subject matter jurisdiction over Title VII claims, a plaintiff must first exhaust his or her administrative remedies by filing a timely charge with the EEOC to allow the agency to investigate the charge.  <u>Lyons v. England</u>, 307 F.3d 1092, 1104 (9th Cir. 2002).  Typically, a plaintiff must file an administrative charge with the EEOC "within 180 days of the last act of discrimination."  <u>MacDonald v. Grace Church Seattle</u>, 457 F.3d 1079, 1081-82 (9th Cir. 2006).  However, if the plaintiff first institutes proceedings with a state or local

---

[7]/ (...continued)
contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  <u>Scott</u>, 550 U.S. at 380.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012).

agency with authority over discrimination claims, then the limitations period is extended to 300 days.  Id. at 1082.

The Supreme Court has stated that "discrete discriminatory acts are not actionable if time barred."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  In this case, each incident where the DOE refused to hire Plaintiff constitutes a "discrete act."  Id. at 114 ("Discrete acts such as . . . refusal to hire are easy to identify.  Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'").  Regarding the statute of limitations, Plaintiff "dual filed" with the Hawaii Civil Rights Commission and the EEOC on February 4, 2009.  Def.'s MSJ at Ex. B & C, ECF No. 139.  Plaintiff concedes that, upon application of the 300 day limitation, only incidents that occurred from April 10, 2008 until February 4, 2009 are actionable under Title VII.  Plntf.'s Opp. at 4, ECF No. 42.  Therefore, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claims based on discrete acts prior to April 10, 2008.

Although Plaintiff may not hold Defendant liable for incidents prior to April 10, 2008; Plaintiff argues that this Court may consider the incidents as circumstantial background evidence to support a finding of discrimination regarding Plaintiff's timely-filed claims.  Plntf.'s Opp. at 4-5, ECF No. 42.

The United States Supreme Court stated that an employee may use "prior acts as background evidence in support of a timely claim." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Accordingly, while Plaintiff may not impose liability or obtain relief for discrete acts prior to April 10, 2008, the Court may consider the prior acts as evidence to determine whether discrimination occurred in the timely-filed claims.  See also, Nelson v. City & Cnty. of San Francisco, 123 Fed. Appx. 817, 820 (9th Cir. 2005) (considering time-barred acts when examining whether inference of discrimination existed for the timely-filed claim); DeCaire v. Mukasey, 530 F.3d 1, 18 (1st Cir. 2008) ("A discriminatory action for which a claim was not timely filed cannot be used as a basis to award relief but can be used as background in support of later claims of gender discrimination."); O'Neal v. City of Chicago, 588 F.3d 406, 409 (7th Cir. 2009) (holding that time-barred acts may be considered as background evidence); Henderson v. Ford Motor Co., 403 F.3d 1026, 1037 (8th Cir. 2005) (acknowledging that time-barred acts may be used as "evidence of discrimination to support a timely claim").

Additionally, the Court may consider Defendant's conduct occurring after Plaintiff's February 4, 2009 administrative charge if such evidence is relevant to the discrete acts at issue in this litigation.  See Lyons v. England,

307 F.3d 1092, 1115 (9th Cir. 2002) (court considered employer acts in 1997 that occurred after the discrete act in 1996 when determining the issue of pretext).

## II. Title VII Statutory Framework

Title VII states that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Ninth Circuit has noted that "a plaintiff may show an inference of discrimination in whatever manner is appropriate in the particular circumstances." Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1156 (9th Cir. 2010). Accordingly, a plaintiff may demonstrate an inference of discrimination by "comparison to similarly situated individuals, or any other circumstances surrounding the adverse employment action that give rise to an inference of discrimination." Id. (internal citations and quotation marks omitted). In order to evaluate the evidence in an orderly way, motions for summary judgment regarding Title VII claims may be analyzed through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hawn, 615 F.3d 1151, 1155-59 (9th Cir. 2010). Both Plaintiff and Defendants utilize the McDonnell Douglas framework in analyzing Plaintiff's claims.

For the first step in the burden-shifting framework, Plaintiff must establish a prima facie case of employment discrimination.  Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1155 (9th Cir. 2010).  In other words, Plaintiff must "offer evidence that gives rise to an inference of unlawful discrimination."  Id. at 1156.  The Ninth Circuit has held that "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."  Chuang v. Univ. of California Davis Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000). "This is because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by a factfinder, upon a full record." Id. (citing Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996)) (internal quotation marks omitted).

Specifically with regard to a failure to hire or failure to promote claim, Plaintiff must show the following elements to establish a prima facie case:  (1) he belongs to a protected class, (2) he applied for and was qualified for a job which the employer was seeking applicants, (3) he was rejected despite his qualifications, and (4) "the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable

to plaintiff's after rejecting plaintiff."[8/]  Dominguez-Curry v.
Nevada Transp. Dep't., 424 F.3d 1027, 1037 (9th Cir. 2005); see
Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002); Cordova v.
State Farm Ins. Co., 124 F.3d 1145, 1148 (9th Cir. 1997); Lam v.
Univ. of Hawai'i, 40 F.3d 1551, 1559 (9th Cir. 1994).

If Plaintiff establishes a prima facie case, "the
burden of production, but not persuasion, then shifts to the
employer to articulate some legitimate, nondiscriminatory reason
for the challenged action."  Hawn, 615 F.3d at 1155.

_____

[8/]    Defendant argues that the standard for the fourth
element is whether "similarly situated individuals outside his
protected class were treated more favorably."  Def.'s MSJ at 23,
ECF No. 35-3 (citing Chuang v. Univ. of Cal. Davis, Bd. of
Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000).  The Court notes
that, in the failure to promote and failure to hire context,
Ninth Circuit panels have articulated the fourth element in
different ways.  Compare Chuang, 225 F.3d at 1123 (examining
whether "similarly situated individuals outside [plaintiff's]
protected class were treated more favorably") with Dominguez-
Curry, 424 F.3d at 1037 (examining whether "the employer filled
the position with an employee not of plaintiff's class, or
continued to consider other applicants whose qualifications were
comparable to plaintiff's after rejecting plaintiff") and Cordova
v. State Farm Ins. Co., 124 F.3d 1145, 1148 (9th Cir. 1997)
(examining whether "the position remained open and the employer
continued to seek applications from persons with comparable
qualifications").  In this case, because the DOE hired females
instead of Plaintiff for the teaching positions despite his
comparable qualifications, Plaintiff establishes a prima facie
case regardless of the standard used for the fourth element.  See
Section III.A.1.a. infra at 28-31.  The court also notes that the
issue of whether Plaintiff's qualifications are superior or
inferior to the selectee's is a question of fact that should not
be decided on summary judgment.  See Lyons v. England, 307 F.3d
1092, 1117 (9th Cir. 2002).

-25-

If Defendant meets this burden, then Plaintiff must raise "a triable issue of material fact" as to whether Defendant's proffered reasons for declining to hire Plaintiff are "mere pretext for unlawful discrimination." Hawn, 615 F.3d at 1155. "[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." Hawn, 615 F.3d at 1158.

"A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). Direct evidence is usually composed of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094-95 (9th Cir. 2005). "Because direct evidence is so probative, the plaintiff need offer 'very little direct evidence to raise a genuine issue of material fact.'" Id. at 1095. In contrast, circumstantial evidence constitutes "evidence that requires an additional inferential step to demonstrate discrimination." Id. at 1095. A plaintiff's circumstantial evidence must be both specific and substantial in order for a Title VII claim to survive summary judgment. Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009) (citing Bergene v. Salt River Project Agr. Imp. And Power Dist., 272 F.3d 1136, 1142-43 (9th Cir. 2001)).

**III. Whether Plaintiff Meets His Burden of Identifying a Genuine Issue of Material Fact Regarding His Race and Sex Discrimination Claims**

Plaintiff over the time period of 2006 - 2008 mentions numerous discrete acts where Defendant failed to hire him.  See generally, Plntf.'s CSF at 2-6, ECF No. 43.  According to the Ninth Circuit, this court should separately consider each discrete act for Plaintiff's discrimination claims.  Norris v. City and Cnty of San Francisco, 900 F.2d 1326, 1330 (9th Cir. 1990) (holding that the district court should have considered each employment decision separately).

With respect to some of Plaintiff's discrete acts, Plaintiff fails to meet his burden under Rule 56 because he does not provide any legal analysis as discussed *infra* in Section III.C.  However, the Court notes that Plaintiff specifically identifies and discusses three discrete acts within the April 10, 2008 through February 4, 2009 timeframe that allegedly demonstrate the DOE's discrimination.  Two of these acts occurred at Keonepoko Elementary School, where Plaintiff interviewed on June 26, 2008 for a fourth grade teacher position and on August 4, 2008 for a kindergarten teacher position.  Plntf.'s Opp. at 7-8.  One act occurred at Waiakea Intermediate School, where Plaintiff interviewed on November 7 and 14, 2008 for an ELL teaching position.  Plntf.'s Opp. at 8-9.  The Court will examine

-27-

each specific school and discrete act discussed by Plaintiff in his Opposition.

**A. Keonepoko Elementary School**

**1. Whether Plaintiff Presents Specific and Substantial Evidence Showing an Inference of Discrimination Regarding the June 26, 2008 Fourth Grade Teaching Position**

On June 26, 2008, Plaintiff interviewed for the position of fourth grade teacher.  Plntf.'s CSF Ex. 6 at 000152, ECF No. 43.  However, he was not hired for the position.  Id. at 000154.

**a. Whether Plaintiff Presents a Prima Facie Case of Discrimination**

Regarding the first three elements of the prima facie case, the DOE concedes that (1) Plaintiff belongs to a protected category (race and sex),[9] (2) Plaintiff applied for and met the minimum qualifications for the fourth grade teaching position, and (3) Plaintiff was rejected from the position.  Def.'s MSJ at 25; Decl. of Romero at 3, ¶ 9 and 4, ¶ 17, ECF No. 35-8.  With respect to the last element, the DOE argues that Plaintiff failed

---

[9]   Under Title VII, Caucasian males are considered a protected class regardless of whether they are part of the minority or the majority of a population.  Clemmons v. Hawaii Medical Serv. Ass'n, 836 F. Supp. 2d 1126, 1137 (D. Haw. 2011) (citing Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 659 (9th Cir. 2002)).

to demonstrate that similarly situated individuals outside of his protected class were treated more favorably.  Def.'s Reply at 6, ECF No. 44.

Regarding the fourth element, Plaintiff may meet his burden in a failure to hire claim by showing that the employer "continued to seek applications from persons with comparable qualifications." Cordova, 124 F.3d at 1148.  In Lam v. Univ. of Hawai'i, the Ninth Circuit found that an Asian woman plaintiff established a prima facie case by showing that a law school rejected the plaintiff's application for a director position in favor of a Caucasian woman.  40 F.3d 1551, 1561 (9th Cir. 1994).[10/]  In this case, there is evidence in the record that the DOE examined other candidates and selected a Caucasian female to fill the position.[11/]  Plntf.'s CSF Ex. 6 at 000154, ECF No. 43; Def.'s Supp. at 8, ECF No. 47.  Regarding the qualifications

---

[10/] The Ninth Circuit noted that, even if the law school presented evidence of its favorable treatment of other Asian women, "such evidence creates at most a genuine dispute as to a material factual question." Id.; See also Gutzwiller v. Fenik, 860 F.2d 1317, 1320-21, 1334 (6th Cir. 1988) (court upheld jury verdict for Caucasian female plaintiff who was denied tenure in favor of another Caucasian female).

[11/] The fact that the selectee is also Caucasian does not prevent Plaintiff from establishing a prima facie case because the Court is required to examine the combination of both race and sex when examining Plaintiff's discrimination claim.  See Lam, 40 F.3d at 1561 (noting that "it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or of the same sex").

requirement, Plaintiff presents evidence that he qualified for the position, which the DOE concedes.  See Plntf.'s Supp., Decl. of Johnson at ¶¶ 2 - 9, ECF No. 48-1; Def.'s MSJ at 25, ECF No. 35-3; Decl. of Husted at ¶ 8, ECF No. 43-1.[12/]  For a motion for summary judgment, this Court need not determine if Plaintiff or the selectee was the best qualified applicant when determining the existence of a prima facie case.  See Lyons v. England, 307 F.3d 1092, 1117 (9th Cir. 2002).

Additionally, the Court notes that Plaintiff meets the standard of showing that similarly situated individuals outside of Plaintiff's class were treated more favorably.  See Chuang, 225 F.3d at 1120, 1124-25.  The Ninth Circuit has stated that the question of whether two persons are similarly situated is "ordinarily a question of fact."  See Hawn, 615 F.3d at 1157.  As mentioned above, a Caucasian female who is outside of Plaintiff's class obtained the teaching position.  Plntf.'s CSF Ex. 6 at 000154, ECF No. 43; Def.'s Supp. at 8, ECF No. 47.  Plaintiff and

---

[12/] Defendant argues that Husted's declaration should be disregarded because Husted was not involved in the hiring process, does not have first-hand knowledge of the interview applicants for each position, and does not know the individual needs of the schools.  Def.'s MSJ at 7, ECF No. 44.  However, the Court observes that Husted used to be the Executive Director and chief negotiator for the Hawaii State Teachers Association and used to work as a teacher in Hawai'i.  Decl. of Husted at ¶ 6, ECF No. 43-1.  Defendant's arguments raise questions about the weight of Plaintiff's evidence that should not be resolved by the Court in a summary judgment proceeding; accordingly, this Court declines to weigh the parties' conflicting evidence.  See In re Barboza, 545 F.3d at 707.

the selectee are arguably similarly situated because Plaintiff also qualified for the position.  See Plntf.'s Supp., Decl. of Johnson at ¶¶ 2 - 9, ECF No. 48-1; Decl. of Husted at ¶ 8, ECF No. 43-1.  Accordingly, Plaintiff meets his burden of establishing a prima facie case.

### b. Whether the DOE Articulates a Legitimate, Nondiscriminatory Reason for Declining to Hire Plaintiff for the Fourth Grade Teaching Position

As noted above, the defendant's burden with respect to establishing a legitimate, nondiscriminatory motive is one of production, not persuasion.  Accordingly, the "defendant need not persuade the court that it was actually motivated by the proffered reasons."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

In this case, the DOE sets forth as its legitimate, nondiscriminatory reason that Plaintiff was not the most qualified candidate for the position.  Decl. of Romero at 4, ¶ 17, ECF No. 35-8.  The selectee for the fourth grade position scored an overall rating of 3 out of 4, which was higher than Plaintiff's rating of 2 out of 4.  Def.'s MSJ Reply at 10, Decl. of Romero at 2, ¶ 7, ECF No. 35-8.  Additionally, the selectee directly answered interview questions in the areas of Instructional management, Interpersonal relationship, and Commitment.  Plntf.'s CSF Ex. 6 at 000154, ECF No. 43.  Moreover,

the selectee's former principals at Chiefess Kapiolani Elementary School and Laupahoehoe Elementary school commended the selectee and stated they would rehire her.  Decl. of Romero at ¶ 7, ECF No. 35-8.

According to the DOE, Plaintiff answered the interview questions with generalizations and gave vague responses.  Decl. of Romero at 3, ¶ 8, ECF No. 35-8.  He allegedly did not provide specific strategies for lesson design and solving non-academic problems.  Plntf.'s CSF Ex. 6 at 000154, ECF No. 43.

Additionally, Principal Romero notes that Plaintiff stated in his interview that "after he got tenure he would shake things up in DOE."  Plntf.'s CSF Ex. 6 at 000155, ECF No. 43. Romero identifies this statement as a "red flag" influencing her decision not to hire Plaintiff because the statement indicates that "student achievement and success may not be his ultimate reason for wanting to work at [Keonepoko]."  Id.  Because the DOE has produced evidence of a legitimate, nondiscriminatory reason for declining to hire Plaintiff, the Court finds that the DOE has met its burden to rebut Plaintiff's prima facie case.  See Bergene, 272 F.3d at 1143 (holding that defendant presented a legitimate, nondiscriminatory reason for promoting male selectee instead of the female plaintiff by producing evidence that the selectee had higher ratings than the plaintiff).

c.  **Whether Plaintiff Presents Specific and Substantial Evidence of Pretext**

As a result of Defendant's stated nondiscriminatory reason for the hiring action; the burden shifts to Plaintiff to raise a "triable issue of material fact as to whether the defendant's proferred reasons . . . are mere pretext for unlawful discrimination. <u>Hawn</u>, 615 F.3d at 1155.  As explained by the Ninth Circuit, "a plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Chuang v. Univ. of California Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir. 2000).

In this case, Plaintiff does not provide any admissible *direct* evidence of Defendant's alleged impermissible discriminatory intent.  <u>See</u> Plntf.'s Opp. at 7-8, ECF No. 42. Plaintiff in his Complaint asserts that unnamed teachers in the DOE made the following statements about the DOE's decision not to hire Plaintiff:  "You are old, white, and male.  This is the DOE my friend.  Get used to it."  Compl. at 3, ECF No. 1.  Besides the fact that Plaintiff does not mention this comment in his Opposition or Concise Statement of Facts; the Court observes that the statement is inadmissable hearsay.  Fed. R. Evid. 801(c).

These statements were made outside of a trial or hearing testimony and would be offered in evidence to prove the truth of the matter asserted - in this case, that the DOE is in fact discriminating against Plaintiff on the basis of race or sex. The statement does not constitute an admission by the DOE because Plaintiff offers no evidence to demonstrate that the statement relates to a matter within the scope of these unknown teachers' employment.  Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir. 1986) (holding that statements of employees are not admissions of the employer if the statement does not relate to a matter within the scope of the employee's employment). Accordingly, because these statements would be inadmissible at trial, Plaintiff's claims cannot survive Defendant's MSJ on the basis of these statements.  See Rule 56 (c)(2); Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 345 n.4 (9th Cir. 1995) ("In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment.").

Because Plaintiff's evidence is circumstantial in nature, the evidence must be both specific and substantial in order to survive summary judgment.  Bergene, 272 F.3d at 1142. For the following reasons, the Court concludes that Plaintiff raises a genuine issue of material fact to survive Defendant's MSJ.

While Defendant argues that Plaintiff was not the best qualified candidate; Plaintiff produces evidence of his qualifications for the position.  Decl. of Johnson at ¶¶ 4-19, ECF No. 48.  The Supreme Court has held that "qualifications evidence may suffice, at least in some circumstances, to show pretext."  Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006).  Plaintiff had been employed as a substitute teacher at several schools and taught classes for numerous grade levels.[13/]  Decl. of Johnson at ¶¶ 14-17, ECF No. 48.  Additionally, prior to receiving his teaching certificate, Plaintiff had obtained teaching experience at a community college and had participated in shaping policies for education institutions.  Id. at ¶¶ 4-6. The question of whether or not Plaintiff's qualifications were higher than the selectee's is an issue of fact for a factfinder to resolve at trial.  See Ash, 546 U.S. at 457; see also, Chuang, 225 F.3d at 1127 (holding that plaintiff's strong qualifications created a genuine issue of material fact regarding pretext).

Additionally, while the DOE argues that Plaintiff did not interview well, the Court observes that the interview process

---

[13/]  The Court observes that Plaintiff's substitute teaching experience is extensive and includes long-term substitute teaching jobs.  See Decl. of Johnson at ¶ 15-17.  Moreover, the record reflects that at least 19 teachers have specifically requested that Plaintiff substitute teach for their classes.  Id. Plaintiff's teaching experience and the fact that his peers request his services provide support for a conclusion that there is a genuine issue of material fact regarding the DOE's motivations for failing to hire him on a full-time basis.

is based on subjective judgments by the interviewers at the various schools.[14]   See Decl. of Tom at 3-5, ECF No. 47-1.   The Ninth Circuit has previously stated that "subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized."   See Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) (citing Jauregui v. City of Glendale, 852 F.2d 1128, 1136 (9th Cir. 1988)).   Plaintiff presents evidence that he had obtained ratings of 3 and 4 out of 4 in a few other DOE interviews.[15]   See Plntf.'s CSF Ex. 3 at 78-79, ECF No. 43-5. Decl. of Farias at 2, ¶ 10, ECF No. 35-11; Plntf.'s CSF Ex. 13 at 000558, ECF No. 43.   Viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Defendant legitimately denied Plaintiff a teaching position based on his interview responses.

---

[14] The Court also notes that the principals' qualifications for the teaching positions are not all uniform - one principal listed that a kindergarten teacher position requires a four-year college degree specifically in education.   See Plntf.'s CSF Ex. 5 at 000367, ECF No. 43-7, Ex. 15 at 000326, ECF No. 43-17.   At the hearing, Defendant's counsel indicated that the four-year college degree need not be an education degree.

[15] The evidence that Plaintiff sought assistance regarding his interview skills at best indicates that the quality of his interview responses is a disputed issue of fact.   Def.'s CSF Ex. A at 000026-28, ECF No. 35-15.   Such evidence appears to show that Plaintiff was motivated to improve his interview skills. Additionally, there is evidence in the record that Plaintiff had scored in the 3-4 range in other interviews.   Plntf.'s CSF Ex. 3 at 78-79, ECF No. 43-5; Decl. of Farias at 2, ¶ 10, ECF No. 35-11; Plntf.'s CSF Ex. 13 at 000558, ECF No. 43.

Plaintiff also argues that, for the fifth grade
position at Paʻauilo Elementary and Intermediate School,
Plaintiff's female classmate who had not passed her PRAXIS exam
was hired instead of Plaintiff, who had passed his PRAXIS exam.
Plntf.'s CSF Ex. 3 at 136-137, 141, ECF No. 43-5.  Such evidence
is probative on the issue of whether Defendant's stated reasons
are pretextual because a member outside of Plaintiff's class was
hired despite Plaintiff's arguably higher qualifications.  <u>Warren
v. City of Carlsbad</u>, 58 F.3d 439, 443 (9th Cir. 1995) (plaintiff
survived defendant's motion for summary judgment by presenting
evidence that members outside of his protected class were hired
despite being ranked lower than plaintiff).  While this incident
occurred in July of 2007; as mentioned above, past discrete acts
may be used as evidence of pretext.  <u>See</u> *supra* Section I at 20-
22.  Thus, the Court concludes that Plaintiff presents sufficient
evidence demonstrating that a genuine issue of material fact
exists regarding the ultimate issue of pretext.

Defendant argues that the ratio of female to male
teachers hired by the DOE in the positions contested by Plaintiff
indicates that there is no pretext.  Def.'s MSJ at 30, ECF No.
35-3.  Additionally, Defendant argues that the principals who
interviewed Plaintiff were "split evenly among gender lines."
Def.'s MSJ at 31, ECF No. 35-3.  However, as the Ninth Circuit
noted in <u>Lam</u>, the Court should not evaluate each characteristic

separately, i.e. examining race alone or sex alone, but the Court must consider whether Plaintiff was discriminated against on the basis of being both Caucasian and male.  See Lam, 40 F.3d at 1562 (noting that "Asian women are subject to a set of stereotypes and assumptions shared neither by Asian men nor by white women"). Defendant's evidence regarding the female to male ratio does not address Plaintiff's particular class of being both Caucasian and male.  The Court also notes that, at best, Defendant's evidence of male teachers and principals within the DOE demonstrates that the issue of pretext is a disputed issue of material fact.  C.f. Lam, 40 F.3d at 1561 (holding that favorable treatment of people in plaintiff's protected class "creates at most a genuine dispute as to a material factual question").  Accordingly, the Court declines to grant summary judgment on the basis of these arguments.

**2. Whether Plaintiff Presents Specific and Substantial Evidence Showing an Inference of Discrimination Regarding the August 4, 2008 Kindergarten Teaching Position**

On August 4, 2008, Plaintiff once again interviewed for the position of kindergarten teacher.  Plntf.'s CSF Ex. 6 at 000152, ECF No. 43.  However, he was not hired for the position. Id. at 000154.

-38-

### a. Whether Plaintiff Presents a Prima Facie Case of Discrimination

Plaintiff and the DOE's analysis regarding the prima facie case for this claim is identical to the prima facie analysis for the June 26, 2008 hiring action discussed above. See Section III.A.1.a., *supra* at 28-31.  The DOE admits that Plaintiff meets the first three elements; regarding the fourth element, there is evidence in the record that the DOE examined other candidates and selected a Japanese female instead of Plaintiff to fill the position.  Plntf.'s CSF Ex. 6 at 000154. For the reasons discussed above, Plaintiff meets the fourth element by raising a genuine issue of material fact that his qualifications are comparable to those of the selectee and that he is similarly situated.  See Section III.A.1.a., supra at 28-31.  Accordingly, Plaintiff meets his burden of establishing a prima facie case.

### b. Whether the DOE Articulates a Legitimate, Nondiscriminatory Reason for Declining to Hire Plaintiff for the Kindergarten Teaching Position

The DOE once again sets forth as its legitimate, nondiscriminatory reason that Plaintiff was not the most qualified candidate for the position.  Decl. Of Romero at 4, ¶ 17, ECF No. 35-8.  The selectee for the kindergarten position scored an overall rating of 3 out of 4, which was higher than

Plaintiff's rating of 2 out of 4.  Def.'s MSJ Reply at 10, ECF
No. 44, Decl. of Romero at 3, ¶ 12 & 14, ECF No. 35-8.
Additionally, the selectee "had specific knowledge of the school
and specific plans for dealing with parent and student problems,
and awareness of assessment data (formative and summative) used
to create lessons."  Decl. of Romero at 3, ¶ 14, ECF No. 35-8;
Plntf.'s CSF Ex. 6 at 000154, ECF No. 43.

　　　　As discussed above, Principal Romero states that
Plaintiff answered the interview questions with generalizations
and gave vague responses.  Decl. of Romero at 3, ¶ 8, ECF No. 35-
8.  He allegedly did not provide specific strategies for lesson
design and solving non-academic problems.  Plntf.'s CSF Ex. 6 at
000154, ECF No. 43.  Additionally, Principal Romero contacted
Plaintiff's former supervisor, Principal Uchimura at Hoʻokena
Elementary School, to inquire about Plaintiff's work quality.
Plntf.'s CSF Ex. 6 at 000154, ECF No. 43.  According to Romero,
Principal Uchimura stated that Plaintiff "needs to watch what he
says to parents," he "might be better if he had more structure,"
and he "had a lot of help from America's Choice coach."[16/]  Id at

---

[16/]　　The Court observes that the statements made by Uchimura
are not hearsay because the statements are used to determine the
information Romero received and her motivations for failing to
hire Plaintiff.  See Fed. R. Evid. 801(c).  The statements are
not used to "prove the truth of the matter asserted," i.e.
whether Plaintiff actually had a lot of help from an America's
Choice coach, or whether Plaintiff actually made inappropriate
statements to parents.  See id.

000153. Furthermore, Uchimura indicated to Romero that she would "rehire him only if she was "desperate"." Id. Romero states that the review she received from Uchimura was one of the reasons she declined to hire Plaintiff. Id. Based on the above reasons, the Court concludes that Defendant meets its burden to present a legitimate, nondiscriminatory reason to rebut Plaintiff's claim. See Bergene, 272 F.3d at 1143.

### c. Whether Plaintiff Presents Specific and Substantial Evidence of Pretext

Because the DOE's legitimate reasons for the August 4, 2008 discrete act are similar to the DOE's reasons for the June 26, 2008 discrete act, the Court's analysis regarding Plaintiff's evidence of pretext applies with equal force here. See Section III.A.1.c., *supra* at 33-38.

In addition to the pretext analysis for June 26, 2008 discrete act, Plaintiff argues that there is additional conduct by Romero that provides further evidence of pretext regarding the August 4, 2008 hiring decision. After the September 2006 interview, Plaintiff asked to meet with Principal Romero to discuss how he could improve his interview skills. Plntf.'s CSF Ex. 3 at 62, ECF No. 43. At some point in the conversation, Romero told Plaintiff "I would never hire you as a kindergarten teacher anyhow . . . [b]ecause you don't have the knowledge of the developmental issues with children that young." Id.

Plaintiff identifies this statement as evidence of
pretext because when he subsequently interviewed for a
kindergarten position on August 4, 2008, he had acquired some
experience teaching kindergarten during his LTA.  Plntf.'s CSF
Ex. 2, ECF No. 43; Def.'s CSF Ex. A at 14-15, ECF No. 35.
Despite his teaching experience, Plaintiff was not hired for the
position.  Plntf.'s CSF Ex. 6 at 000154, ECF No. 43.  The
Japanese female hired on August 4, 2008 did not have any
kindergarten teaching experience, which appears to be contrary to
Romero's representations that such experience is required for the
position.  Plntf.'s CSF Ex. 6 at 000154, ECF No. 43.  As
mentioned above, Plaintiff may provide evidence of pretext by
showing that the employer's proffered explanation is internally
inconsistent.  Chuang, 225 F.3d at 1127.  Because a fact finder
could possibly find that the DOE's explanations for rejecting
Plaintiff are internally inconsistent, Plaintiff raises an
genuine issue of material fact.

Additionally, Plaintiff argues that he presents
sufficient evidence of pretext because he was not hired despite
the fact that he was the only applicant on the first PRO list
submitted for the kindergarten position.  Plntf.'s Opp. at 8, ECF
No. 42.  Defendant argues that Plaintiff had only scored a rating
of 2 in the interview, and Principal Romero only considers
teacher applicants who receive a rating of 3 or 4 out of 4

"because it ensures hiring a quality teacher."  Decl. of Romero at 4, ¶ 15, ECF No. 35-8.  However, Principal Romero appears to be imposing a higher standard than the criteria listed in the interview scale.  The Court observes that, according to the rating scale criteria, a rating of "2" indicates that Plaintiff's KSAs "are applicable in meeting most of the job requirements, including some of the more difficult expectations."  Decl. of Tom at 3, ¶ 10, ECF No. 47-1.  The issue of whether Principal Romero's higher standard is a pretext for discrimination should be determined by a trier of fact; accordingly, the Court denies Defendant's motion for summary judgment.

**B. Waiakea Intermediate School**

Plaintiff identifies one discrete act at Waiakea that supposedly establishes race and sex discrimination.  Plntf.'s Opp. at 8-10.  Plaintiff interviewed for an ELL teaching position on November 7 and 14 in 2008, but he was not hired.  Plntf.'s CSF Ex. 2, Ex. 13 at 000558, ECF No. 43.

**1. Whether Plaintiff Presents a Prima Facie Case of Discrimination**

Plaintiff and the DOE's analysis regarding the prima facie case for this claim is identical to the prima facie analysis for the Keonepoko June 26, 2008 and August 4, 2008 hiring actions discussed above.  See Section III.A.1.a., *supra* at 28-31; Section III.A.2.a at 39.  The DOE admits that Plaintiff

meets the first three elements.  Def.'s MSJ at 25, ECF No. 35;
Decl. of Hill at 4, ¶ 22, ECF No. 44-1.  Regarding the fourth
element, there is evidence in the record that the DOE examined
other candidates and selected a Caucasian female instead of
Plaintiff to fill the position.  Plntf.'s CSF Ex. 13 at 000559.
For the reasons discussed above, Plaintiff meets the fourth
element by raising a genuine issue of material fact that his
qualifications are comparable to those of the selectee and that
he is similarly situated.  See Section III.A.1.a., supra at 28-
31.  Accordingly, Plaintiff meets his burden of establishing a
prima facie case.

### 2. Whether the DOE Articulates a Legitimate, Nondiscriminatory Reason for Declining to Hire Plaintiff for the ELL Teaching Position

Principal Matsunami provides the following reasons for
denying Plaintiff the ELL teaching position:  1) Plaintiff is not
a certificated ELL teacher, (2) Plaintiff did not have knowledge
of the basic categorization of second language learners as
illustrated by his statement "I don't know the term N.E.P." (Non-
English Proficient), and (3) Plaintiff was unclear regarding his
knowledge of how to teach reading to ELL students.  Plntf.'s CSF
Ex. 13 at 000559, ECF No. 43.  Additionally, Vice Principal Hill
states that Plaintiff did not perform well in the interview
because he did not stay on topic or cease talking when given cues

to stop.  Decl. of Hill at 3, ¶ 12, ECF No. 44-1.  Furthermore, Mr. Hill states that Plaintiff did not have experience teaching middle school and that he had "limited knowledge of Hawaii Content and Performance Standards."  Id.  The Court concludes that Defendant has met its burden of production to set forth a legitimate, nondiscriminatory reason for declining to hire Plaintiff.  See Burdine, 450 U.S. at 255-56.

### 3. Whether Plaintiff Presents Specific and Substantial Evidence of Pretext

Plaintiff argues that there is a material issue of fact because Plaintiff participated in multiple interviews for the ELL position.  Plntf.'s Opp. at 8-9.  For the first round of interviews, two of the interviewers gave Plaintiff a rating of 4 out of 4.  Plntf.'s CSF Ex. 13 at 000558.  Despite this favorable rating, Vice Principal Hill required Plaintiff to participate in a second interview with a panel composed of Principal Matsunami and Vice Principal Hill.  Decl. of Matsunami at 2, ¶¶ 7-8.  In the subsequent interview, Principal Matsunami rated Plaintiff a 1 out of 4, and Vice Principal Hill rated Plaintiff a 2 out of 4.  Id. at 3, ¶ 9.  For the purposes of summary judgment, the Court views the facts in the light most favorable to Plaintiff and assumes that Plaintiff's first interview scores were an accurate rating of Plaintiff's skills.  Accordingly, Vice Principal Hill's decision to vacate Plaintiff's first rating and to require a

second interview raises a genuine issue of material fact that Plaintiff's supposed deficit in his interviewing skills was not the reason the DOE declined to hire him.

Plaintiff also argues that Principal Matsunami's stated preference of a teacher with an ELL certificate is pretextual because Plaintiff's lack of ELL certification was not an issue during the first interview.  Plntf.'s Opp. at 9, ECF No. 42. Plaintiff also argues that an ELL certificate is not required in order to obtain the job, and there are ELL teachers in the DOE who do not have an ELL certificate.  Def.'s CSF Ex. A at 000036, ECF No. 35-15.  Because Plaintiff presents evidence contesting Defendant's legitimate reason in addition to evidence that he had interviewed well, the Court concludes that Plaintiff raises a genuine issue of material fact regarding pretext.

Plaintiff also applies his evidence of pretext regarding his interview skills and qualifications to the Waiakea job position.  See Section III.A.1.c., supra at 33-38. Accordingly, for the reasons stated above, the Court concludes that Plaintiff's evidence as discussed in Section III.A.1.c. provides additional support that Plaintiff raises a genuine issue of material fact to defeat Defendant's MSJ as to the November 2008 ELL teacher position.

**C. Whether this Court Should Grant Defendant's MSJ Regarding Alleged Discrete Acts of Discrimination Occurring at Other Schools After April 10, 2008**

The Court notes that Plaintiff briefly refers to the following list of discrete acts in his Concise Statement of Facts but does not otherwise discuss these acts in his Opposition:[17]

(1) Plaintiff's interview on September 4, 2008 for the position of second grade teacher at Chiefess Kapiolani School (Plntf.'s CSF at 4, ¶ 11);

(2) Plaintiff's interview on July 7, 2008 for the position of fifth grade teacher at Kea'au Elementary School (Plntf.'s CSF at 3, ¶ 10, ECF No. 43);

(3) Plaintiff's interview on June 17, 2008 for the position of kindergarten teacher at Na'alehu Elementary School (Plntf.'s CSF at 2, ¶ 6);

(4) Plaintiff's interview on July 2, 2008 for the position of second or fifth grade teacher at Waiakea Elementary School (Plntf.'s CSF at 3, ¶ 9);

(5) Plaintiff's interviews on June 30, 2008 for the position of first grade teacher and October 21, 2008 for the position

---

[17]   Both parties agree that (1) Plaintiff interviewed at Honoka'a Elementary on December 8, 2008 for the position of fourth grade teacher and (2) Plaintiff would have been hired except for a Hawaii Labor Relations Board order that mandated that the prior teacher be returned to the fourth grade position. Def.'s CSF at 5, ¶ 13, ECF No. 36; Plntf.'s CSF at 2 (Plaintiff agrees with Defendant's ¶ 13).

of third grade teacher at Waiakea Waena Elementary School (Plntf.'s CSF at 3, ¶ 8, ECF No. 43).

For the above discrete acts, Plaintiff has not met his burden under Rule 56 to demonstrate that a genuine issue of material fact exists regarding race and sex discrimination for the acts listed above.  Plaintiff's brief descriptions of these interviews in his statement of facts does not demonstrate how the DOE's actions discriminated against Plaintiff on the basis of his race and sex.  Nor does Plaintiff provide specific and substantial evidence to show that Defendant's legitimate nondiscriminatory reasons are pretextual.  See Def.'s MSJ at 28, ECF No. 35-3.  Accordingly, the Court GRANTS Defendant's MSJ for the discrete acts occurring at Chiefess Kapiolani School, Kea'au Elementary School, Na'alehu Elementary School, Waiakea Elementary School, and Waiakea Waena Elementary School.

## CONCLUSION

For the foregoing reasons, the Court

(1) GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claims based on discrete acts prior to April 10, 2008,

(2) DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claims based on the following discrete acts:

(a) Defendant's failure to hire Plaintiff after his
June 26, 2008 interview for the fourth grade teacher
position at Keonepoko Elementary School,

(b) Defendant's failure to hire Plaintiff after his
August 4, 2008 interview for the kindergarten teacher
position at Keonepoko Elementary School, and

(c) Defendant's failure to hire Plaintiff after his
November 2008 interviews for the ELL teacher position
at Waiakea Intermediate School, and

(3) GRANTS Defendant's Motion for Summary Judgment as
to the following discrete acts because Plaintiff failed to
produce any evidence to meet his burden of raising a genuine
issue of material fact as required by Rule 56:

(a) Defendant's failure to hire Plaintiff after his
interview on September 4, 2008 for the position of
second grade teacher at Chiefess Kapiolani School
(Plntf.'s CSF at 4, ¶ 11);

(b) Defendant's failure to hire Plaintiff after his
interview on July 7, 2008 for the position of fifth
grade teacher at Kea'au Elementary School (Plntf.'s CSF
at 3, ¶ 10, ECF No. 43);

(c) Defendant's failure to hire Plaintiff after his
interview on June 17, 2008 for the position of

kindergarten teacher at Naʻalehu Elementary School
(Plntf.'s CSF at 2, ¶ 6);

(d) Defendant's failure to hire Plaintiff after his
interview on July 2, 2008 for the position of second or
fifth grade teacher at Waiakea Elementary School
(Plntf.'s CSF at 3, ¶ 9);

(e) Defendant's failure to hire Plaintiff after his
interviews on June 30, 2008 for the position of first
grade teacher and October 21, 2008 for the position of
third grade teacher at Waiakea Waena Elementary School
(Plntf.'s CSF at 3, ¶ 8, ECF No. 43).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, July 2, 2013.



_____
Alan C. Kay
Sr. United States District Judge

Johnson v. Dep't of Educ., State of Hawaiʻi, Civ. No. 11-00704 ACK-RLP: ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.